BARU v. DUPREY.

1. ACCOUNTING—SALE OF RETAIL LIQUOR BUSINESS—NET PROFIT—SALARIES.

Where defendant vendor of retail liquor business agreed to credit to plaintiff towards the purchase price, the "net profit" of the business for the time after license was renewed until date of agreement, an accounting by defendant was called for and where it was also provided that the "net profit" was to "be determined from the books of the business," defendant was not entitled to salary for himself and wife where no item for such salary was shown on the books.

2. SAME—SALE OF RETAIL LIQUOR BUSINESS—COST OF LICENSE.

Entire sum paid for liquor license was chargeable to purchaser of retail liquor business in accounting under contract of purchase since it was an expense to be deducted from the net profits, as without it the business could not have been operated during period for which accounting was had and inured to plaintiff purchaser's benefit during remainder of license year.

Appeal from Muskegon; Sanford (Joseph F.), J. Submitted April 8, 1949. (Docket No. 45, Calendar No. 44,358.) Decided June 6, 1949.

REFERENCES FOR POINTS IN HEADNOTES
[1] 1 Am Jur, Accounts and Accounting, § 42 et seq.

Bill by Stanley Baru against Frank Duprey for an accounting. From decree rendered, plaintiff appeals. Modified and decree entered in Supreme Court.

*George A. Parmenter,* for plaintiff.

Boyles, J. Plaintiff, as the purchaser of a tavern business and equipment operating under a class C liquor license in Muskegon, filed a bill of complaint in chancery against the vendor, for an accounting. The circuit judge, hearing the matter on the pleadings and some testimony taken in open court, entered a decree allowing the defendant to credit himself with the sum of $1,500 for salary of himself and wife in conducting the business, and $500 for the annual liquor license. From the allowance of these two items as a credit to the defendant on the accounting, the plaintiff appeals.

In January, 1946, the defendant and plaintiff entered into a written agreement giving plaintiff an option until May 1st to purchase the defendant's tavern property and business for $26,000. On April 25th, plaintiff notified the defendant in writing that he was exercising his option and that he was ready to comply with its terms and conditions. The defendant refused to comply. In the meantime, the plaintiff had procured a lease from the owner of the land and building occupied by the tavern, for a three-year term with an option of 2 additional years. The defendant was occupying the premises on a month-to-month basis. In July, based on said lease the plaintiff secured a judgment for possession in proceedings before a circuit court commissioner, whereupon the defendant moved out of the premises in July, leaving an empty building. This situation called for further negotiations, resulting in a written agreement between the parties for purchase and

sale of said tavern and business, executed August 5, 1946. By it the defendant sold plaintiff the tavern business, equipment and agreed to transfer the liquor license, for $26,000, plus the cost of certain alcoholic beverages inventoried. The agreement provided that the purchase price was "to be paid in the following manner by the buyer: The amount of net profit of said business to be determined from the books of the business, since the 1st day of May, 1946, to the present time, is to be deducted from said amount, the balance thereof to be paid $10,000 upon the execution of this agreement and the balance in monthly instalments of $500, or more, per month."

The dispute arises over a difference of opinion as to how much should be deducted from the amount which plaintiff was to pay for the business—in other words, what was "the amount of net profit of said business" since May 1st, which under the agreement inured to the benefit of the plaintiff on the purchase price. The agreement obviously contemplated that this "net profit," which the defendant then held, should be accounted for by the defendant and that the amount thereof be credited to the plaintiff on his purchase price.

The agreement provided that the aforesaid net profit of said business "be determined from the books of the business." Notwithstanding the fact that the defendant had made no entry on the books of any item of salary for himself or his wife, on the accounting he claimed, and the trial court allowed him as a part of the expenses of the business, the sum of $1,500 as salary for himself and his wife. It was shown that at no time, either before or after May 1st, had the defendant shown on the books of the business any withdrawal or claim of any salary either for himself or his wife. The defendant testified that he had operated the business about 5 years before he sold it to the plaintiff, that "I never paid

myself each week for operating the bar. I never took out a salary." There was no understanding between plaintiff and defendant that the defendant was to have a salary for himself and his wife, as a part of the expense after. May 1st. The salary claimed by the defendant for his wife, as stated in his answer, was:

"That during the months of May, June, and July, defendant's wife was employed in said tavern cashing checks on certain days for customers at a salary of $25 per week, which item should be deducted."

In their written agreement of August 5th, the parties agreed that the amount of the net profit was to be determined from the books of the business. We cannot read such a provision out of the contract. Had the parties contemplated the allowance of any salary for the defendant and his wife while defendant was in possession after May 1st, as owner of the business, it would have been a simple matter to have included it in the agreement. The defendant should not have been credited in the accounting with the claimed sum of $1,500.

Appellant also contends that the defendant should not be allowed to add as an expense, to be deducted from the net profits, the $500 paid by him for the liquor license for the year beginning May 1st. The plaintiff claims that the cost should be prorated, one twelfth allocated to each month, and that he should be charged only for 3 months—$125. The entire cost of the liquor license, under the agreement of August 5th, inured to the benefit of the plaintiff. Without the license, the tavern could not have been operated during May, June and July, during which time the net profits of the business were, in effect, a benefit to the plaintiff by a deduction from the purchase price he was to pay. The cost of the license for the remaining 9 months also inured to plaintiff's bene-

fit, if he were to operate the tavern. The agreement provided that if transfer of the license to plaintiff should not be effected, the deal was off. Under the circumstances, the defendant was properly allowed by the trial court this item of $500 as a necessary expense.

A decree may be entered in this Court in accordance herewith, with costs to appellant. Appellee has not filed a brief in this Court.

SHARPE, C. J., and BUSHNELL, REID, NORTH, DETHMERS, BUTZEL, and CARR, JJ., concurred.